1  Patrick G. Byrne, Esq.
   Nevada Bar No. 7636
2  Bradley T. Austin, Esq.
   Nevada Bar No. 13064
3  Clark C. Knobel, Esq.
   Nevada Bar No. 15943
4  SNELL & WILMER L.L.P.
   1700 S. Pavilion Center Drive, Suite 700
5  Las Vegas, NV 89135
   Telephone: (702) 784-5200
6  Facsimile: (702) 784-5252
   Email: pbyrne@swlaw.com
7  Email: baustin@swlaw.com
   Email: cknobel@swlaw.com
8
   Crystal Nix-Hines (*pro hac vice* application forthcoming)
9  California Bar No. 326971*
   New York Bar No. 2482073*
10 Quinn Emanuel Urquhart & Sullivan LLP
   865 S. Figueroa St., 10th Floor
11 Los Angeles, California 90017
   Telephone: (213) 443-3000
12 Facsimile: (213) 443-3100
   Email: crystalnixhines@quinnemanuel.com
13
   Stephen Hauss (*pro hac vice* application forthcoming)
14 Washington D.C. Bar No. 1009019*
   California Bar No. 250211*
15 Quinn Emanuel Urquhart & Sullivan LLP
   555 13th Street NW, Suite 600
16 Washington D.C. 20004
   Telephone: (202) 538-8000
17 Facsimile: (202) 538-8100
   Email: stephenhauss@quinnemanuel.com
18
   Christina L. Wu (*pro hac vice* application forthcoming)
19 California Bar No. 233186*
   Quinn Emanuel Urquhart & Sullivan LLP
20 50 California St., 22nd Floor
   San Francisco CA 94111
21 Telephone: (415) 875-6600
   Facsimile: (415) 875-6700
22 Email: christinawu@quinnemanuel.com

23 *will comply with LR IA 11-2 within 14 days

24 Attorneys for AUTONOMOUS
   ORGANIZATION OF EDUCATION
25 "NAZARBAYEV UNIVERSITY," a
   Kazakhstan educational organization; and
26 AUTONOMOUS ORGANIZATION OF
   EDUCATION "NAZARBAYEV
27 INTELLECTUAL SCHOOLS," a Kazakhstan
   educational organization
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA, SOUTHERN DIVISION

AUTONOMOUS ORGANIZATION OF
EDUCATION "NAZARBAYEV
UNIVERSITY," a Kazakhstan educational
organization; and AUTONOMOUS
ORGANIZATION OF EDUCATION
"NAZARBAYEV INTELLECTUAL
SCHOOLS," a Kazakhstan educational
organization,

         Plaintiffs,

   vs.

NEW GENERATION FOUNDATION, INC.,
a Nevada non-profit corporation; JYSAN
HOLDINGS, LLC, a Nevada Limited Liability
Company; NGF HOLDINGS LLC, a Nevada
limited liability company; NGF PROTECTOR
LLC, a Nevada limited liability company;
ROBERT F. ARMAO, AS TRUSTEE OF
THE NGF NEVADA TRUST, a Nevada
Trust; NURALY BEKTURGANOV, AS
TRUSTEE OF THE NGF NEVADA TRUST,
a Nevada Trust; JOEL WEST MCCLEARY,
an individual; ROBERT F. ARMAO, an
individual; NURALY BEKTURGANOV, an
individual; AIDOS BEKTURGANOV, an
individual; GANBAT CHULUUNKHUU, an
individual; and DOES 1-100.

         Defendants.

Case No.

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiffs Autonomous Organization of Education "Nazarbayev University" and

Autonomous Organization of Education "Nazarbayev Intellectual Schools" (collectively,

"Plaintiffs" or "NU and NIS"), by and through undersigned counsel, hereby file this Complaint

against Defendants New Generation Foundation, Inc., Jysan Holdings, LLC, NGF Holdings LLC,

NGF Protector LLC, Robert F. Armao as Trustee of the NGF Nevada Trust, Nuraly Bekturganov

as Trustee of the NGF Nevada Trust, Joel West McCleary, Robert F. Armao, Nuraly Bekturganov,

Aidos Bekturganov, Ganbat Chuluunkhuu, and Does 1-100 (collectively, "Defendants").  Upon

knowledge with respect to its own acts and upon information and belief with respect to all other matters, Plaintiffs allege as follows:

## INTRODUCTION

1.    This action arises from a brazen scheme perpetrated by the directors and officers of a Nevada nonprofit corporation to enrich themselves and a favored insider at the direct expense of the sole charitable beneficiaries the corporation was created to serve—two educational institutions that educate tens of thousands of schoolchildren and students in Kazakhstan.  Defendants' egregious breaches of their fiduciary duties have deprived Plaintiffs of tens of millions of dollars in funds that were expressly earmarked for Plaintiffs' benefit to further their educational mission.

2.    Specifically, New Generation Foundation, Inc. ("NGF") was incorporated in Nevada in December 2019 with a single, unambiguous charitable purpose: to secure funding exclusively for Plaintiffs Nazarbayev University, Kazakhstan's premier English-language global research institution, and Nazarbayev Intellectual Schools, a network of 22 Kazakhstan schools that educate students aged 11 to 18 at no charge to the families.

3.    NGF's Amended Articles of Incorporation dated December 30, 2019 (the "Amended Articles") unequivocally state that "the ***sole purpose*** of [NGF] to be conducted or promoted is to secure funding for the activities of" Plaintiffs NU and NIS (emphasis added).  The Amended Articles further state that, upon NGF's dissolution, "the remaining assets shall be distributed to or for the benefit of, and ***only to and for the benefit of***" Plaintiffs (emphasis added).

4.    NGF was the sole member of Defendant Jysan Holdings, LLC ("JH"), which in turn had majority ownership of Jusan Technologies Ltd. ("JTL") a company with assets in Kazakhstan.  Through its indirect ownership of JTL, NGF received passive income in the form of dividends and distributions from the business and operations of JTL and its holdings.

5.    In 2022, Joel West McCleary, Robert F. Armao, and Nuraly Bekturganov took control of NGF.  Defendant Aidos Bekturganov took control of JH along with an individual named M. Ron Wahid ("Wahid").  Around that time, disputes arose regarding the control and ownership

of the assets held in Kazakhstan.  This led to legal proceedings in Kazakhstan, the District of Nevada, and the United Kingdom.

6.    In June 2023, a global Settlement Agreement was entered concerning those assets. As part of the settlement, NGF agreed to dissolve.  Consistent with NGF's Amended Articles, the Settlement Agreement stated in express, mandatory terms that, upon NGF's dissolution, all of NGF's remaining assets "shall be distributed to or for the benefit of, and only to and for the benefit of" Plaintiffs.

7.    But rather than distributing the monies to Plaintiffs as required, Defendants McCleary, Armao, N. Bekturganov, A. Bekturganov, and Ganbat Chuluunkhuu have failed to transfer a single dollar.  Instead, they have engaged in blatant self-dealing to enrich themselves with millions of dollars of unjustifiable payments, creating a Trust that a Nevada Probate Court declared was invalid and formed in breach of fiduciary duties, and proffering sketchy and incomplete accounting to shield their financial improprieties.

8.    In 2023, Defendants McCleary, Armao, N. Bekturganov, and A. Bekturganov caused *at least* $51 million in improper payments to Wahid, including: a $35 million option payment, a $12 million severance payment, a $500,000 salary from NGF, $841,058 in base compensation from NGF-related companies, and $3.2 million in bonus and incentive compensation.  In June 2023, Defendants McCleary, Armao, and N. Bekturganov—as the members of the Board of Directors of NGF—approved for themselves termination fees totaling $2.25 million, representing three years' worth of compensation, despite having overseen NGF for less than two years.

9.    In January 2024, in their capacity as members of the Board of Directors of NGF, Defendants McCleary, Armao, and N. Bekturganov approved the sale of JH and JTL.  This sale was orchestrated with the managers of JH, Defendant A. Bekturganov and Wahid.  This was a sale of NGF's primary asset.  JTL had held approximately $35 million in cash or cash equivalents as of December 31, 2023.  Documents produced in a related action indicate that NGF received less

than $28 million from the sale of JH and JTL, significantly less than the $35 million that JTL had held only one month earlier.

10.    After extracting these funds, on February 21, 2024, NGF's Board of Directors and its Executive Director, Defendant Chuluunkhuu, dissolved the company.  Upon dissolution, the Board of Directors and the Executive Director were obligated under NGF's Amended Articles to distribute NGF's remaining assets to Plaintiffs.  Defendants, however, violated their fiduciary obligations to Plaintiffs and sought to deprive Plaintiffs of the funds for their own benefit.

11.    On or around February 29, 2024, Defendants formed a new Nevada entity, called the NGF Nevada Trust ("Nevada Trust") and appointed Defendants Armao and N. Bekturganov as trustees.  Defendants then transferred the remaining depleted assets—which appeared to total approximately $28 million—to the Nevada Trust rather than distributing the funds directly to Plaintiffs as required.

12.    The creation of the Nevada Trust and transfer of assets violated NGF's Amended Articles as well as the Settlement Agreement, and constituted a breach of the fiduciary duties of NGF's directors and officers to Plaintiffs.  NGF's directors and officers further breached their fiduciary duties by creating an entirely new class of beneficiaries not authorized in the Amended Articles or the Settlement Agreement; specifically, the Nevada Trust would issue grants to "[o]ne or more other educational or social welfare programs located in Kazakhstan, as are in existence from time to time and determined by the Trustees in their absolute discretion to demonstrate an intent to embrace democratic values, promote freedom of expression, Western-style education and/or free enterprise."  This language was in clear contravention to NGF's Amended Articles and the Settlement Agreement, neither of which gave Defendants *any* discretion to distribute the remaining funds to any entities other than Plaintiffs.

13.    Documents obtained from the Nevada Trust show that Defendants intended to keep $20 million—the majority of the misappropriated assets—as a litigation reserve to defend against claims arising from Defendants' own misconduct.  Defendants further intended to purportedly use $8 million for scholarships for the newly-created class of beneficiaries, leaving **nothing** for

1  distribution to Plaintiffs.  Indeed, Plaintiffs have received no funds from NGF since 2022, when

2  Defendants took over the organization, despite NGF's sole mission to fund them.

3      14.    For nearly a year, Defendants concealed these unlawful actions from Plaintiffs.

4  Only around August 2024, during a Nevada Probate Court proceeding concerning the Nevada

5  Trust, did Plaintiffs begin to discover the full scope of the betrayal: that assets dedicated by charter

6  exclusively to support Plaintiffs had been systematically looted by the very fiduciaries charged

7  with protecting them.

8      15.    Plaintiffs sought to invalidate the Nevada Trust in Nevada Probate Court.  On

9  August 12, 2025, the Probate Court issued an order attached hereto as Exhibit 3 finding that "NGF

10  improperly transferred its remaining assets into the NGF Nevada Trust."[1]  It further found that

11  Defendants Armao and Nuraly Bekturganov, who had become trustees of the Nevada Trust, had

12  violated their fiduciary duties and had engaged in self-dealing: "The Trustees engaged in self-

13  dealing, authorizing substantial compensation without independent oversight and indemnification

14  provisions for themselves, and provided insufficient justification for depletion of significant Trust

15  assets."[2]

16      16.    The Nevada Probate Court invalidated the Nevada Trust and found that the

17  remaining assets should be distributed to Plaintiffs, with a $10 million reserve held in escrow to

18  cover any legitimate wind-down expenses of NGF that were approved by the Probate Court.

19      17.    In violation of the Nevada Probate Court's Minute Order, Defendants have still

20  failed to release any of NGF's remaining assets to Plaintiffs.

21      18.    While Plaintiffs are continuing to pursue relief regarding the Nevada Trust in the

22  Probate Court proceeding, that proceeding does not address the entirety of Defendants'

23  wrongdoing, particularly with respect to Defendants' self-dealing and waste before NGF was

24

25  _____

26  [1]  August 12, 2025 Minute Order of the District Court for Clark County, Nevada, In the Matter of
the Trust of: The NGF Nevada Trust dated February 29, 2024, Case No. P-24-122187-T (Ex. 3) at
27  pg. 13.
[2]  *Id.*

28

1    dissolved.  Plaintiffs therefore bring this action to recover the assets that rightfully belong to them,

2    to hold Defendants accountable for their breaches of duty to ensure that the funds to which

3    Plaintiffs are entitled are returned to them and that funds intended to support Plaintiffs are not

4    further dissipated by self-dealing fiduciaries.

5                                               **PARTIES**

6           19.    Plaintiff Autonomous Organization of Education "Nazarbayev University" ("NU")

7    is a non-profit organization established under the laws of the Republic of Kazakhstan in 2010.  NU

8    is Kazakhstan's flagship English-language research university and is ranked in first-place in the

9    Caucasus and Central Asia in the Times Higher Education World University Rankings 2026.  Over

10   the past 15 years, NU has graduated 12,000 professionals who are in demand today in Kazakhstan

11   and abroad.

12          20.    Plaintiff Autonomous Organization of Education "Nazarbayev Intellectual

13   Schools" ("NIS") (collectively with NU, "Plaintiffs") is a non-profit organization established

14   under the laws of the Republic of Kazakhstan in 2008.  NIS operates a network of 22 schools

15   across Kazakhstan, serving tens of thousands of students annually.

16          21.    Defendant New Generation Foundation, Inc. ("NGF") is a Nevada nonprofit

17   corporation that was incorporated on December 19, 2019, and dissolved on February 21, 2024.

18   NGF's last known principal address was 1810 E. Sahara Avenue, Suite 587, Las Vegas, Nevada

19   89104.   NGF was the sole member of Jysan Holdings ("JH") from September 2020 until

20   approximately January 29, 2024.

21          22.    Defendant Jysan Holdings, LLC ("JH") is a Nevada limited liability company that

22   was formed in or before 2020.  JH's registered agent address is c/o Corporation Service Company,

23   112 North Curry Street, Carson City, Nevada 89703.  JH's business address is 10161 West Park

24   Run Drive, Suite 150, Las Vegas, Nevada 89145.  NGF was the sole member of JH from

25   September 2020 until the sale of JH to the JH Defense Trust on January 29, 2024.  JH held more

26   than 90% of the ownership interests in Jusan Technologies Ltd. ("JTL").  Defendants A.

27   Bekturganov as well as Wahid continue to serve as Managers of JH.

28

23.     Defendant NGF Holdings LLC is a Nevada limited liability company that was formed on December 28, 2023.  NGF Holdings LLC's registered agent address is c/o Corporation Service Company, 112 North Curry Street, Carson City, Nevada 89703.  NGF Holdings LLC was formed by the Director Defendants approximately two months before NGF's dissolution specifically to receive and hold assets that the Amended Articles required be distributed to Plaintiffs.  Upon information and belief, NGF Holdings LLC owns bank accounts containing assets that should have been distributed directly to Plaintiffs.

24.     Defendant NGF Protector LLC is a Nevada limited liability company that was formed on December 28, 2023.  NGF Protector LLC's registered agent address is c/o Corporation Service Company, 112 North Curry Street, Carson City, Nevada 89703.  The members of NGF Protector LLC are Defendants McCleary, Armao, N. Bekturganov, and NGF itself.  NGF Protector LLC was formed by the Director Defendants to serve as Trust Protector of the Nevada Trust, creating a sham oversight structure in which the trustees would oversee themselves, thereby facilitating self-dealing and preventing independent scrutiny of their misuse of assets belonging to Plaintiffs.

25.     By this Complaint, Plaintiffs assert claims against Defendant Robert F. Armao, as Trustee of the NGF Nevada Trust, and Defendant Nuraly Bekturganov, as Trustee of the NGF Nevada Trust.  The NGF Nevada Trust (the "Nevada Trust") is a Nevada trust that was created on February 29, 2024.  The trustees of the Nevada Trust are Defendants Armao and N. Bekturganov.  Following the dissolution of NGF, NGF's funds were improperly transferred to the Nevada Trust, and those funds were held in accounts belonging to NGF Holdings and NGF Protector.

26.     Defendant Joel West McCleary is an individual who, at all relevant times from 2022 through NGF's dissolution on February 21, 2024, served as a Director of NGF.  In approximately January 2022, McCleary became a Director at NGF and later became Chairman of the Board of Directors, a position he held through NGF's dissolution in February 2024.  By October 2022, McCleary had also become Treasurer of NGF, another position he held through dissolution.  McCleary is also a member of NGF Protector LLC and serves as Trust Protector of the Nevada

Trust through NGF Protector LLC.  In its Annual and Amended Lists of Officers, Managers, Members, General Partners, Managing Partners, Trustees or Subscribers filed with the Secretary of State of Nevada on April 20, 2022, June 2, 2022, October 24, 2022, December 16, 2022, February 16, 2023, and December 28, 2023, NGF identified McCleary's address as 1810 E. Sahara Avenue, Suite 587, Las Vegas, Nevada 89104.  Upon information and belief, McCleary currently resides at 1415 34th Street NW, Washington, DC 20007.

27.    Defendant Robert F. Armao is an individual who, at all relevant times from May 2022 through NGF's dissolution in February 2024, served as a Director of NGF.  Armao is also a member of NGF Protector LLC and serves as co-trustee of the Nevada Trust.  In its Annual and Amended Lists of Officers, Managers, Members, General Partners, Managing Partners, Trustees or Subscribers filed with the Secretary of State of Nevada on June 2, 2022, October 24, 2022, December 16, 2022, February 16, 2023, and December 28, 2023, NGF identified Armao's address as 1810 E. Sahara Avenue, Suite 587, Las Vegas, Nevada 89104.  Upon information and belief, Armao currently resides at 239 E. 17th Street, New York, New York 10003.

28.    Defendant Nuraly Bekturganov ("N. Bekturganov") is an individual who, at all relevant times from approximately May 2022 through NGF's dissolution in February 2024, served as Director of NGF.  N. Bekturganov also served as Secretary from approximately December 2022 through NGF's dissolution.  N. Bekturganov is also a member of NGF Protector LLC and serves as co-trustee of the Nevada Trust.  In its Annual and Amended Lists of Officers, Managers, Members, General Partners, Managing Partners, Trustees or Subscribers filed with the Secretary of State of Nevada on June 2, 2022, October 24, 2022, December 16, 2022, February 16, 2023, and December 28, 2023, NGF identified N. Bekturganov's address as 1810 E. Sahara Avenue, Suite 587, Las Vegas, Nevada 89104.  Upon information and belief, N. Bekturganov currently resides at 46425 Beartown Drive, Sterling, Virginia 20164.

29.    Defendant Aidos Bekturganov ("A. Bekturganov") is an individual who became Executive Director of NGF by April 2022.  The position of Executive Director was an officer position.  A. Bekturganov served as Executive Director of NGF through February 2024.  A.

Bekturganov also served as Treasurer of NGF in mid-2022.  On information and belief, A. Bekturganov is the son of Defendant N. Bekturganov.  In its Annual and Amended Lists of Officers, Managers, Members, General Partners, Managing Partners, Trustees or Subscribers filed with the Secretary of State of Nevada on April 20, 2022, June 2, 2022, December 16, 2022, February 16, 2023, and December 28, 2023, NGF identified A. Bekturganov's address as 1810 E. Sahara Avenue, Suite 587, Las Vegas, Nevada 89104.  A. Bekturganov also became a Manager of JH in or before June 2022, and he continues to serve in that role as of the date of the filing of this Complaint.  In its Annual and Amended Lists of Officers, Managers, Members, General Partners, Managing Partners, Trustees or Subscribers filed with the Secretary of State of Nevada on June 2, 2022, September 7, 2022, September 21, 2023, September 23, 2024, and September 21, 2025, JH identified A. Bekturganov's address as 10161 West Park Run Drive, Suite 150, Las Vegas, Nevada 89145.  Upon information and belief, A. Bekturganov currently resides at 2791 Centerboro Drive, Unit 389, Vienna, Virginia 22181.

30.     Defendant Ganbat Chuluunkhuu is an individual who served as an Outside Consultant to NGF from December 12, 2022 through February 19, 2024.  On February 20, 2024, one day before NGF dissolved, Chuluunkhuu assumed the duties of Executive Director of NGF.  On February 21, 2024, Chuluunkhuu signed NGF's Certificate of Dissolution in his capacity as "Authorized Signer."  Since at least June 2024, Chuluunkhuu has served as Executive Director and Treasurer of the Nevada Trust.  He has also served as Defendant NGF Protector LLC's Executive Director.  Upon information and belief, Chuluunkhuu currently resides at 86 Huntville Road, Katonah, New York 10536.

31.     Defendants DOES 1-100, inclusive, are each directly or vicariously responsible for the harms alleged in this Complaint.  Plaintiffs do not know their names, capacities, and ways in which they harmed Plaintiffs.  Plaintiffs thus sue DOES 1-100 pseudonymously.  If and when Plaintiffs learn the Defendants' true names, capacities, and ways in which they caused harm, Plaintiffs will seek leave to amend this Complaint.

1    32.    Defendants McCleary, Armao, and N. Bekturganov, are referred to collectively

2    herein as the "Director Defendants."   Defendants McCleary, Armao, N. Bekturganov, A.

3    Bekturganov, and Chuluunkhuu, are referred to collectively herein as the "Individual Defendants."

4    Defendants JH, NGF Holdings LLC, NGF Protector LLC, and the Nevada Trust are referred to

5    collectively herein as the "Entity Defendants."

6                                **JURISDICTION AND VENUE**

7    33.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.

8    § 1332(a)(2).   Plaintiffs are organizations established under the laws of the Republic of

9    Kazakhstan.  Defendants are citizens of the United States and/or entities organized under the laws

10   of Nevada.  Complete diversity of citizenship exists between Plaintiffs and Defendants.

11   34.    The amount in controversy exceeds $75,000 exclusive of interests and costs.

12   Plaintiffs seek to recover tens of millions of dollars that were wrongfully diverted from Plaintiffs,

13   and potentially as much as $50 million or more depending on a full accounting of NGF's assets

14   and the payments made by Defendants.

15   35.    This Court has personal jurisdiction over Defendant NGF because NGF was a

16   Nevada corporation with its principal place of business in Nevada.

17   36.    This Court has personal jurisdiction over Defendants JH, NGF Holdings LLC, NGF

18   Protector LLC, and the Nevada Trust because they are Nevada entities with their principal places

19   of business or administration in Nevada.

20   37.    This Court has personal jurisdiction over Defendants Armao, McCleary, N.

21   Bekturganov, A. Bekturganov, and Chuluunkhuu pursuant to Nev. Rev. Stat. § 75.160.  Defendants

22   Armao, McCleary, N. Bekturganov and A. Bekturganov each accepted appointments as director

23   and/or officers of NGF, a Nevada nonprofit corporation, and served in those capacities from 2022

24   through February 2024.  Defendant Chuluunkhuu accepted an appointment as an officer of NGF

25   in February 2024.   By accepting such appointments, each Defendant consented to personal

26   jurisdiction in Nevada for claims alleging violation of duties in their capacities as officers and

27   directors of NGF.

28

38.    The Court also has personal jurisdiction over Defendants Armao, McCleary, N. Bekturganov, A. Bekturganov and Chuluunkhuu because they each committed intentional wrongful acts in Nevada, through the purposeful availment of Nevada law, that caused harm to NGF, a Nevada corporation, and Plaintiffs, its charitable beneficiaries.

39.    The Individual Defendants each participated in acts that improperly drained the funds of NGF, and each participated in dissolving NGF and transferring NGF's assets to the Nevada Trust they established in violation of NGF's Amended Articles of Incorporation and the Settlement Agreement.  The Individual Defendants also each had business addresses at NGF in Nevada at the time of the wrongful acts at issue, and Defendant A. Bekturganov continues to have a business address in Nevada in connection with his Manager position at JH.

40.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because all or a substantial part of the events giving rise to the claims occurred in this District.  NGF was a Nevada corporation.   JH, NGF Holdings LLC, NGF Protector LLC, and the Nevada Trust are Nevada entities.  The fiduciary duties at issue arose under Nevada law.  The decisions to make improper payments from NGF's assets, to dissolve NGF in violation of Nevada law, to sell JH, and to transfer assets to a Nevada trust all constituted conduct directed at and affecting Nevada entities.

## **BACKGROUND**

### I.    NGF'S FUNDS WERE SOLELY INTENDED TO BENEFIT PLAINTIFFS

#### A.    NGF Was Founded for the Sole Purpose of Funding NU and NIS

41.    NU was established in 2010 as Kazakhstan's flagship English-language university with a vision to educate students in Kazakhstan and contribute to Kazakhstan's development as an international innovation and knowledge hub.  The university has integrated itself into the academic research ecosystem and is associated with more than 5,600 international publications.

42.    NIS was established in 2008 to develop a modern educational platform from preschool through high school by integrating the best national and international practices and

1    significant scientific achievements.    Today, NIS operates 22 schools across all regions of

2    Kazakhstan.

3        43.    Together, Plaintiffs educate tens of thousands of students annually at 23 educational

4    institutions throughout Kazakhstan.    Their mission emphasizes excellence, academic rigor, and

5    evidence-based research.

6        44.    On December 19, 2019, NGF was incorporated as a Nevada nonprofit corporation.

7    NGF was established in Nevada specifically to ensure financial stability and transparency for

8    Plaintiffs' endowments.

9        45.    NGF's December 19, 2019 Articles of Incorporation, attached hereto as Exhibit 1,

10   expressly state that its "sole purpose" was to "provide funding" for NU and NIS as sole

11   beneficiaries.

12       46.    On December 30, 2019, NGF's Articles of Incorporation were amended.    The

13   Amended and Restated Articles of Incorporation ("Amended Articles") are attached hereto as

14   Exhibit 2.    The First Article of the Amended Articles states that NGF's "sole purpose" was to

15   "secure funding" for NU and NIS:

16           [T]he **sole purpose** of the Corporation to be conducted or promoted
             is to secure funding for the activities of the autonomous
17           organization of education "Nazarbayev University", autonomous
             educational organization "Nazarbayev Intellectual Schools", each
18           located in the Republic of Kazakhstan and each a not-for-profit
             entity, and their organizations (emphasis added).[3]
19

20       47.    The Amended Articles further stated that "[n]o part of the net earnings of" NGF

21   "shall inure to the benefit of or be distributable to its directors, officers, or other private persons,

22   except that the Corporation shall be authorized and empowered to pay reasonable compensation

23   for services rendered."[4]

24

25

26   _____

27   [3]   Amended Articles, Ex. 2 at Ex. A pg. 7 (First Article).

28   [4]   Amended Articles, Ex. 2 at Ex. A pg. 8 (Fourth Article).

48.     The Sixth Article of NGF's Amended Articles mandated in clear, unambiguous language that upon dissolution, all remaining assets "shall be distributed to or for the benefit of, and only to and for the benefit of" NU and NIS:

> Upon the winding up and dissolution of the Corporation, after paying or adequately providing for the debts and obligations of the Corporation, the remaining assets shall be distributed to or for the benefit of, and ***only to and for the benefit of*** the autonomous organization of education 'Nazarbayev University', autonomous educational organization 'Nazarbayev Intellectual schools [sic]', each located in the Republic of Kazakhstan and each for a not-for-profit entity (emphasis added).[5]

This mandatory distribution left no room for discretion, no possibility for alternative beneficiaries, and no authority for NGF's directors to use dissolution as an opportunity to benefit themselves or third parties. To the extent that compensation to the directors was provided, the Amended Articles made clear that such compensation must be "reasonable."[6]

49.     NGF was funded through assets provided by the Nazarbayev Fund in September 2020.  These funds and assets were provided for one purpose only: to further the educational efforts of NU and NIS.  On September 28, 2020, NGF entered a Deed of Gift Agreement and Assignment, under which it was gifted 100% of the membership interests in Jysan Holding, LLC ("JH").  The Deed of Gift Agreement and Assignment stated that NGF was given the membership interests of JH to support Plaintiffs:

> It is acknowledged that the gift and assignment of the Transferred Interests [in JH] are made solely to support the tax-exempt purposes of [NGF], namely, to support the charitable, educational, and social welfare missions of the autonomous organization of education "Nazarbayev University," "Nazarbayev Intellectual Schools," each located in the Republic of Kazakhstan and each for a not-for-profit entity, and their organizations, and raise their profile in the international community ("Exempt Purposes").  The Donor makes the gift of the Transferred Interests exclusively to support the Exempt Purposes of [NGF].

---

[5]    Amended Articles, Ex. 2 at Ex. A pg. 8 (Sixth Article).

[6]    Amended Articles, Ex. 2 at Ex. A pg. 8 (Fourth Article).

50.     The corporate structure created to accomplish NGF's charitable mission operated as follows: NGF was the sole member of JH.  JH held more than 90% of the ownership interests in Jusan Technologies Ltd. ("JTL"), an England and Wales limited company.  JTL held investments in assets in Kazakhstan.

51.     Under this structure, funds would flow from JTL to JH, and then to NGF.  NGF was obligated to use these funds exclusively to support Plaintiffs for their educational missions.

**B.     In 2022, Defendant Directors Joined NGF**

52.     In 2022, Defendants joined NGF and gradually took control of its operations. Defendants McCleary, Armao, and N. Bekturganov all became members of the Board of Directors. Defendant McCleary joined NGF as Director in approximately January 2022.  Defendants Armao and N. Bekturganov joined the Board in approximately May 2022.  By October 2022, McCleary had become the Chairman of the Board of Directors.

53.     By April 2022, Defendant A. Bekturganov joined NGF as its Executive Director of NGF.  As Executive Director, he was responsible for the day-to-day operations of NGF.  He also had responsibilities to NGF as its Treasurer in mid-2022.

54.     On approximately December 12, 2022, Defendant Chuluunkhuu became a consultant to NGF.  On February 20, 2024, Chuluunkhuu took over the duties of Executive Director of NGF.

55.     In mid-2022, the management of JH, which was owned by NGF, also changed.  By June 2022, Defendant A. Bekturganov had become a Manager of JH, which controlled JTL.  Wahid also became a Manager of JH.

56.     Despite this change in leadership, the December 30, 2019 Amended Articles of Incorporation remained in force.  NGF's mission remained the same: to support Plaintiffs exclusively.  The Amended Articles of Incorporation continued to require that all assets upon dissolution be distributed solely to Plaintiffs.

C.    **NGF Becomes Bound By a Settlement Agreement Confirming Its Obligation to Distribute all Assets to Plaintiffs**

57.    By early 2023, JTL's Kazakh banking assets were marred by disputes. JTL's banking assets were frozen and new legislation prevented JTL from receiving dividends from those assets. This led to legal proceedings in Kazakhstan, the District of Nevada and the United Kingdom.

58.    On June 6, 2023, to resolve these disputes across various forums, JH and JTL entered into a Settlement and Release Agreement (the "Settlement Agreement").

59.    Under the terms of the Settlement Agreement, JTL's assets in Kazakhstan were sold, and JTL would receive approximately $75 million in net proceeds. Section 2.1.5 of the Settlement Agreement imposed a contractual obligation on NGF. Specifically, it required that by the Settlement Closing of July 31, 2023, NGF would:

> (a) have initiated the process of its liquidation, with NGF and any other Respondent Entities involved bearing their own costs; and

> (b) after the final distribution of its assets on completion of liquidation, donate any remaining surplus assets or funds to the Nazarbayev University and/or Nazarbayev Intellectual Schools."

60.    The Settlement Agreement was a valid, binding contract. On July 5, 2023, NGF acceded to the Settlement Agreement by Deed of Accession, thereby binding itself to the Agreement's terms and making NGF a party to the contract. Although Plaintiffs were not signatories to the Settlement Agreement, they were intended third-party beneficiaries by its plain terms.

## II.    THE INDIVIDUAL DEFENDANTS IMPROPERLY ENRICHED THEMSELVES

61.    Instead of preserving assets for distribution to Plaintiffs as mandated in the Amended Articles and confirmed in the Settlement Agreement, in 2023 and 2024, the Defendants embarked on a scheme to enrich themselves by siphoning funds that were intended to benefit Plaintiffs. In so doing, the Director and Officer Defendants breached their fiduciary duties to Plaintiffs under the Amended Articles.

A.      **The $35 Million Option Payment**

62.     On April 20, 2023—approximately six weeks before NGF acceded to the Settlement Agreement requiring liquidation and distribution of all assets to Plaintiffs—an agreement was executed among Wahid, JTL, Defendant NGF, and Defendant JH ("April 20 Agreement").  At the time, Plaintiffs had no knowledge of this agreement, and did not learn about it until approximately April 18, 2025, when Defendants Armao and N. Bekturganov filed a copy of the agreement in a Nevada Probate Court proceeding.

63.     The April 20 Agreement was made in anticipation of the execution of the June 2023 Settlement Agreement.  Under the April 20 Agreement, JTL would put $35 million from the settlement proceeds into escrow for Wahid.  The purported basis for this escrow was to fulfill the terms of an alleged "option agreement" that was purportedly entered in November 2022.  A later agreement entered on August 17, 2023 indicates that, under the purported option agreement, Wahid would be paid $35 million in the event that JTL did not give him "an option over 5% of the shares" of the company.

64.     After the Settlement Agreement was entered in June 2023, JTL paid the $35 million to Wahid.  As of June 2023, Wahid had been the Manager of JH for approximately one year.

65.     As the sole member of JH and, in turn, the ultimate beneficial owner of JTL, NGF was obligated to monitor the compensation of the Managers of JH.  The majority of JTL's assets belonged to JH, which in turn belonged to NGF.  As a result, any diversion of funds at JTL or JH ultimately reduced the amount of funds that NGF received to meet its obligation to support Plaintiffs as required by the Amended Articles.  The Director and Officer Defendants therefore had a fiduciary duty to Plaintiffs under the Amended Articles to ensure that any compensation paid by JH was reasonable and not excessive, and to ensure that NGF's assets were preserved for distribution to Plaintiffs.

66.     The Director and Officer Defendants were aware of and approved this $35 million payment to Wahid.

67.     Upon information and belief, the purported justification for this $35 million payment was inadequate, pretextual, or nonexistent.  The payment was grossly excessive.  No legitimate corporate purpose supported paying $35 million to an individual who had managed JH for approximately one year, from assets that the Amended Articles designated exclusively for the benefit of Plaintiffs.

68.     This payment was made to benefit Wahid personally and to deplete assets that would otherwise be distributed to Plaintiffs pursuant to NGF's Amended Articles and the Settlement Agreement.

**B.     The $12 Million Severance Payment**

69.     The $35 million option payment was not the only payment made to Wahid.  On August 17, 2023—approximately six weeks after NGF had contractually committed to liquidate and confirmed its obligation to distribute all assets to Plaintiffs pursuant to the Settlement Agreement—JTL and Wahid entered a Deed of Termination.

70.     The Deed of Termination terminated Wahid's purported employment with JTL. Wahid had purportedly been employed by JTL for one year.  Wahid continued to act as a Manager of JH following the termination of his purported employment with JTL.

71.     Under the August 17, 2023 Deed of Termination, JTL agreed to pay Wahid $12 million as a severance payment.

72.     A $12 million severance payment for one year of employment at JTL is grossly excessive and constitutes a waste of corporate assets.

73.     JTL made this $12 million severance payment to Wahid in September 2023, less than two months after NGF had contractually obligated itself under the Settlement Agreement to liquidate and confirmed its obligation to distribute all assets to Plaintiffs.

74.     As with the $35 million option payment, the Director and Officer Defendants were under a fiduciary obligation arising from the Amended Articles to safeguard NGF's assets for distribution to Plaintiffs, and specifically to ensure that any compensation paid to Wahid was reasonable and not excessive.  This fiduciary obligation was owed to Plaintiffs.

75.    The Director and Officer Defendants were aware of and approved the $12 million severance payment to Wahid.

76.    This excessive severance payment was made to benefit Wahid personally and further depleted assets that belonged to Plaintiffs under the Settlement Agreement and NGF's Amended Articles.

**C.    Additional Payments Made to Wahid**

77.    In addition to the $35 million option payment and the $12 million payment, NGF also directly paid Wahid a $500,000 salary in the year 2023 in connection with his role as the Manager and Chairman of the Board of Managers at JH.  Further, according to NGF's 2023 Form 990, Wahid received an additional $814,058 in base compensation from unspecified companies that were related to NGF, and an additional $3,200,000 in bonuses and incentive compensation from unspecified related companies.  Altogether, this totaled more than $51 million in compensation to Wahid in the year 2023.

78.    According to an October 28, 2023 email that Wahid sent to NGF, JTL and JH had a total of approximately $85 million in cash as of that date, but after its expected expenses—including the $35 million option payment—were paid, JTL and JH expected to have only a little over $30 million in funds remaining at the end of the year 2023.  Wahid's $51 million compensation in the year 2023 therefore wiped out a large portion of JTL and JH's assets, and was grossly excessive in light of JTL and JH's overall assets.  The Director and Officer Defendants breached their fiduciary duties to Plaintiffs by approving Wahid's excessive compensation.

**D.    The Director Defendants Awarded Themselves Excessive Severance Pay**

79.     The Director Defendants also approved excessive compensation and termination bonuses for themselves from funds that were intended to benefit Plaintiffs.

80.    According to NGF's 2023 Form 990 tax return, NGF paid a total of $1,252,338 in compensation to the Director Defendants and Officer Defendants during the year 2023:

- McCleary: $337,500

- Armao: $300,000

- N. Bekturganov: $314,838
- A. Bekturganov: $300,000

81.  Not content with these payments, on June 2, 2023, in anticipation of the execution of the Settlement Agreement, the Director Defendants resolved to pay themselves an additional $2,250,000 in severance payments:

- McCleary: $810,000
- Armao: $720,000
- N. Bekturganov: $720,000

82.  These termination fees equaled three years of the Director Defendants' annual retainers.  They were paid on February 21, 2024, the very day of NGF's dissolution.  These payments were made in addition to the base compensation that NGF paid the Directors in early 2024 before termination:

- McCleary: $67,500
- Armao: $60,000
- N. Bekturganov: $60,000

83.  These termination fees were excessive—far in excess of what directors of non-profit organizations are paid.  That the Director Defendants had worked at NGF for less than two years only underscores the excessive and illegitimate nature of the payments.

84.  Moreover, in a classic example of self-dealing, the Director Defendants approved these excessive payments to themselves knowing that NGF was obligated under its Amended Articles and the Settlement Agreement to distribute all remaining assets to Plaintiffs upon dissolution, and knowing that every dollar paid to themselves was a dollar taken from Plaintiffs and the students they serve.  By authorizing these termination fees, the Director Defendants engaged in self-dealing and breached their fiduciary duties owed to Plaintiffs under the Amended Articles.

**E.    Plaintiffs Were Unaware of Defendants' Improper Self-Dealing**

85.    Plaintiffs were not aware of the Defendants' plundering of NGF's assets, nor did they have any way of becoming aware of these actions.  From 2023 to the present, Plaintiffs have had no representation on NGF's Board of Directors.  Plaintiffs were not consulted about major decisions affecting assets that belonged to them.  Plaintiffs were not provided financial statements or accountings showing how NGF's assets were being managed or deployed.  The Director Defendants operated the organization with opacity, providing Plaintiffs with no visibility into NGF's financial condition, decision-making, or plans for the future.

86.    The excessive payments to Wahid and Defendants McCleary, Armao, and N. Bekturganov likely only represent a fraction of the corporate waste committed by the Individual Defendants.  For example, an October 28, 2023 email sent by Wahid to NGF indicates that, in late 2023, JTL and JH might have made millions of dollars in severance payments to other individuals.  Because Plaintiffs have no visibility into NGF's finances aside from what has been disclosed in the Nevada Probate Court proceeding, Plaintiffs have been unable to determine the full scope of Defendants' fraud.  Plaintiffs reserve the right to amend their complaint based on any further information it obtains in the future.

**III.    THE INDIVIDUAL DEFENDANTS IMPROPERLY SOLD JH AND JTL**

**A.    The Individual Defendants and JH Conspired to Sell JH and JTL to the JH Defense Trust**

87.    The Director Defendants and A. Bekturganov conspired to further deplete NGF's assets by selling JH and JTL.  On January 29, 2024, the Director Defendants approved and signed a Sale and Assignment Agreement to sell JH and JTL to JH Defense Trust (the "Sale and Assignment Agreement").

88.    Plaintiffs have not received a copy of said Sale and Assignment Agreement, and they did not become aware of the existence of this sale until approximately July 18, 2025, when counsel for the Nevada Trust filed a June 14, 2024 Board Resolution in the Nevada Probate Court proceedings.  The Board Resolution stated that the sale of JH and JTL was in the "best interests"

of "the board members of NGF who have considerable potential legal liabilities from litigation and reputational risk over the next years."

89.    The Board Resolution further stated that, "[a]s per NGF counsel Holland & Knight LLP, the [sale] Agreement breaks direct relationship with JH and JTL thus avoiding some liabilities to NGF and its directors."

90.    Upon information and belief, Defendant A. Bekturganov was involved in negotiations of this Sale and Assignment Agreement in his role as a Manager of JH.  Defendant A. Bekturganov also was involved in negotiations in his role as Executive Director of NGF.

91.    The sale of JH and JTL violated the Amended Articles, which required that NGF's assets be used for the benefit of Plaintiffs and that all of NGF's assets be distributed to Plaintiffs upon NGF's dissolution.  It also violated the Settlement Agreement.  Further, upon information and belief, NGF received far less from the sale of JH and JTL than what those assets should have been worth.  JTL's Annual Financial Statements show that, as of December 31, 2023—one month before the sale—JTL had approximately $35 million in cash and cash equivalents.  Documents filed by the Nevada Trust in the Nevada Probate Court proceeding indicate that NGF received less than $28 million from the sale of JH and JTL.  By diverting assets less than one month before NGF dissolved, the Director Defendants and A. Bekturganov violated their contractual obligations and fiduciary duties to Plaintiffs.  Defendants have withheld all information regarding the identity and control of the JH Defense Trust, including whether any Individual Defendant serves as trustee, officer, director, or member of that entity.  If discovery reveals that any Individual Defendant controls or holds an ownership interest in the JH Defense Trust, the transaction would constitute not merely a breach of fiduciary duty through sale of valuable assets at a depressed price, but actionable self-dealing—the diversion of NGF's primary assets to the very fiduciaries charged with preserving those assets for Plaintiffs' exclusive benefit.

IV.    **THE NGF DIRECTORS AND OFFICERS IMPROPERLY REFUSED TO DISTRIBUTE NGF'S ASSETS TO PLAINTIFFS AFTER DISSOLUTION**

A.    **The Director Defendants Improperly Failed To Notify Plaintiffs When It Dissolved NGF**

92.    As discussed above, the June 2023 Settlement Agreement required NGF to initiate the liquidation process by July 31, 2023.

93.    NGF failed to initiate liquidation by the July 31, 2023 deadline.  Instead, NGF continued to operate for nearly seven additional months while the Director Defendants and A. Bekturganov continued to bilk the organization, drawing compensation and approving improper payments to Wahid and themselves.

94.    Then, on February 21, 2024, NGF filed a Certificate of Dissolution with the Nevada Secretary of State. The Certificate of Dissolution was signed by Defendant Chuluunkhuu who signed as an "officer, incorporator, and director" even though he had only assumed the duties of Executive Director one day earlier, on February 20, 2024.

95.    Under Nev. Rev. Stat. § 82.451(1), a voluntary dissolution of a nonprofit corporation requires board approval and approval "by any person or superior organization whose approval is required by a provision of the articles authorized by NRS 82.091."

96.    Nev. Rev. Stat. § 82.091(2) provides that "upon dissolution of the corporation and the payment of its debts . . . the assets of the corporation must be distributed to the superior organization or any person" designated in the articles.

97.    Because NGF's Amended Articles of Incorporation required that all residual assets be distributed exclusively to NU and NIS, Nevada law required NGF to seek and obtain approval from NU and NIS before dissolving and distributing its assets.

98.    NGF never sought such approval nor alerted either Plaintiff as to how it intended to distribute the assets upon dissolution.  That would have afforded Plaintiffs an opportunity to raise inquiries regarding NGF's assets.  Rather, as detailed below, NGF actively concealed its dissolution and the state of its assets from Plaintiffs for months.

**B.      The Directors Violated the Amended Articles and the Settlement Agreement by Creating the Nevada Trust**

99.     Upon dissolution, NGF was required under its Amended Articles and the Settlement Agreement to distribute its assets to Plaintiffs.  The Individual Defendants blatantly ignored this binding legal and contractual obligation.  Instead, they created the Nevada Trust to wield further power for themselves  and divert assets intended for Plaintiffs to themselves.

100.    On February 29, 2024, eight days after its dissolution, NGF became the grantor of Defendant Nevada Trust and transferred its assets to two companies held by the Nevada Trust—Defendants NGF Holdings LLC and NGF Protector LLC.

101.    The Nevada Trust was subject to Nevada law.  According to filings made by the Defendants Armao and N. Bekturganov in the Nevada Probate Court proceedings, Nevada law was chosen to "utilize Nevada's favorable statutory protections governing spendthrift trusts, including its abbreviated limitations period and elevated burden of proof for setting aside transfers."

102.    Defendant McCleary signed the Nevada Trust formation document in his capacity as "Chairman of the Board of Directors" on behalf of NGF.  Defendants Armao and N. Bekturganov became the Trustees of the Nevada Trust.  Defendant Chuluunkhuu became the Executive Director and Treasurer of the Nevada Trust.

103.    Defendants NGF Holdings LLC and NGF Protector LLC were formed on December 28, 2023—two months before the Nevada Trust's creation—in anticipation of NGF's dissolution.  The Nevada Trust owns both companies.  Defendants McCleary, Armao, and N. Bekturganov were Managers of NGF Holdings.  Defendant McCleary acted as NGF Holdings' Secretary, Defendant Armao acted as its President, and Defendant N. Bekturganov acted as its Vice President.

104.    Defendants McCleary, Armao, and N. Bekturganov were appointed the Managers of Defendant NGF Protector.  Defendant McCleary acted as NGF Protector's President, and

1    Defendant M. Bekturganov was appointed Secretary.  Defendant Chuluunkhuu was appointed as

2    Defendant NGF Protector's Executive Director.

3        105.    Any possibility of independent oversight of the Nevada Trust was eliminated by

4    the appointment of Defendant NGF Protector LLC as Trust Protector.  In effect, the Defendants

5    Armao and N. Bekturganov, who were the Trustees of the Nevada Trust and members of NGF

6    Protector, appointed themselves as their own overseers so that they could continue enriching

7    themselves in gross dereliction of their duties as Directors.

8        106.    The creation of the Nevada Trust, and the transfer of NGF's remaining assets to the

9    Nevada Trust, violated both NGF's Amended Articles and the Settlement Agreement.  The

10   Individual Defendants breached their fiduciary duties owed to Plaintiffs under the Amended

11   Articles by purposely diverting all of NGF's remaining assets away from Plaintiffs.

12   **C.    The Individual Defendants Violated NGF's Amended Articles and the**

13          **Settlement Agreement by Creating a New Class of Beneficiaries**

14       107.    To make good on their scheme, the Individual Defendants further violated both

15   NGF's Amended Articles and the Settlement Agreement by adding an entirely new and

16   unauthorized class of beneficiaries to the Nevada Trust.

17       108.    Specifically, the Trust added the following category of beneficiaries: "One or more

18   other educational or social welfare programs located in Kazakhstan, as are in existence from time

19   to time and determined by the Trustees in their absolute discretion to demonstrate an intent to

20   embrace democratic values, promote freedom of expression, Western-style education and/or free

21   enterprise."

22       109.    Neither NGF's Amended Articles nor the Settlement Agreement contemplated the

23   creation of any beneficiaries other than Plaintiffs.  To the contrary, the Amended Articles mandated

24   distribution of NGF's assets "to or for the benefit of, and only to and for the benefit of" NU and

25   NIS.  The Settlement Agreement required distribution of all liquidated assets to Plaintiffs.

26

27

28

110.    By adding this new class of beneficiaries and giving the trustees of the Nevada Trust "absolute discretion" to determine which entities would qualify, the Individual Defendants violated their fiduciary duties owed to Plaintiffs under the Amended Articles.

### D.    The Director Defendants and Defendant Chuluunkhuu Diverted All of NGF's Funds From Plaintiffs To Benefit Themselves

111.    The Nevada Trust documents further demonstrated the intent of the Individual Defendants to retain assets for their own benefit rather than distribute to Plaintiffs as the Amended Articles required.

112.    Documents filed by the Trustees in the Nevada Probate Court proceeding indicate that, of the $28 million that the Nevada Trust appeared to hold, the Director Defendants and Defendant Chuluunkhuu intended to keep $20 million as a "legal defense fund."  The remaining $8 million would be allocated for scholarships.  These scholarships were not intended for Plaintiffs, but rather the new category of beneficiaries that had been improperly created under the Nevada Trust.

113.    As a result, under this structure, ***Plaintiffs—the sole rightful beneficiaries of 100% of NGF's assets—would receive nothing***, while Defendants Armao, N. Bekturganov, and Chuluunkhuu would control a $20 million litigation reserve fund and have discretion over an $8 million scholarship fund purportedly supporting other entities of their own choosing.

114.    The formation of the Nevada Trust gave the Director Defendants and Defendant Chuluunkhuu the opportunity to continue to extract additional funds from the assets intended for Plaintiffs.  Defendants Armao and N. Bekturganov, who appointed themselves as Trustees of the Nevada Trust, authorized themselves to receive ongoing "extraordinary compensation" from the Nevada Trust, on the pretext that they expected to face litigation.  They each received an annual base compensation of $300,000.

115.    Defendant Chuluunkhuu, who served as Executive Director of the Nevada Trust, also received an annual base salary of $300,000.  Defendant McCleary also received an annual base salary of $300,000 as Trust Protector through NGF Protector LLC.

116. The compensation paid to the Director Defendants and Defendant Chuluunkhuu constituted a waste of assets that should have been distributed to Plaintiffs.

117. Notably, the compensation paid to the Director Defendants was in addition to the "severance payments" that they received from NGF. As a result, in February 2024, the Director Defendants received severance compensation in the amount of three times their annual retainer at NGF, but then immediately began to receive a new annual retainer from the Nevada Trust they proceeded to create. Clearly, the three-year "severance payments" to the Director Defendants were not reasonable and were a sham to extract more funds from NGF's assets, at Plaintiffs' expense.

118. The Nevada Trust further provided that Defendants Armao and N. Bekturganov "shall be indemnified and held harmless by the Trust . . . [such] indemnification shall include expenses, including attorneys' fees, judgments, fines, and amounts paid in settlement." By this provision, Defendants Armao and N. Bekturganov authorized themselves to use funds siphoned from Plaintiffs to defend themselves against claims arising from their own misconduct. As the Nevada Probate Court found on August 12, 2025, the trustees "engaged in self-dealing, authorizing substantial compensation without independent oversight and indemnification provisions for themselves, and provided insufficient justification for depletion of significant Trust assets."

119. Further, the only "scholarship" that has been made under the Nevada Trust was $58,878 to a vice-president at VPE Capital to obtain a "Mid-Career Masters" at Harvard University in the United States. This was a breach of the terms of the Nevada Trust instrument itself, which required distributions to "educational or social welfare programs located in Kazakhstan". Defendants Armao, N. Bekturganov and Chuluunkhuu evidently had no intention of playing by their own rules.

**E.    Defendants Armao, N. Bekturganov, and Chuluunkhuu Made Poor Investments With The NGF Funds After Improperly Transferring the Funds to the Nevada Trust**

120. Following the creation of the Nevada Trust, Defendants Armao, N. Bekturganov, and Chuluunkhuu made risky and improvident investments with NGF's assets. In June 2024, the

Nevada Trust entered a Limited Partnership Agreement in which it committed to contribute $2,030,000 of the funds it received from NGF. Through this agreement, the Nevada Trust would acquire high-risk mortgages. For example, it acquired two mortgage loans with a 24% default interest rate per annum. These mortgage loans were non-performing and concerned properties that were the subject of extensive litigation in New York State Supreme Court. The Nevada Trust paid $20,000 for the "brokerage services" for acquiring these two loans. Upon information and belief, the Nevada Trust has yet to receive any payments in respect of these investments to date. Further, a Nevada Trust investment proposal shows that the trustees—Defendants Armao and N. Bekturganov—were taking advantage the Nevada Trust's real estate investments to enrich themselves. The investment proposal states that, as the trustees, Defendants Armao and N. Bekturganov would be paid a fee to review investment documents, attend meetings, and provide guidance regarding the Nevada Trust's investments. These fees were in addition to the $300,000 base compensation that Defendants Armao and N. Bekturganov had already given themselves.

121.    In October 2024, the Nevada Trust retained an Italian investment advisory firm named Blackgold Pharmasolutions SRL in connection with a potential investment in an Italian bank. The Nevada Trust paid at least $15,000 to Blackgold Pharmasolutions SRL. That investment never materialized.

122.    These investments and expenses were made at the direction of Defendants Armao, N. Bekturganov, and Chuluunkhuu.

123.    These risky investments and expenses were highly speculative at best, and served to further deplete and delay distribution of NGF's assets, in yet further breach of Defendants Armao, N. Bekturganov, and Chuluunkhuu's obligations under the Amended Articles to preserve assets for immediate distribution to Plaintiffs.

124.    These investments further depleted NGF's assets and delayed distribution of those assets to Plaintiffs.

1

**F.    NGF Actively Concealed the Trust from Plaintiffs**

2      125.    For months following NGF's dissolution and the Trust's creation, the Director

3  Defendants and NGF actively concealed these events from Plaintiffs.

4      126.    On or around April 30, 2024—over two months after the Nevada Trust was

5  formed—counsel for the Nazarbayev Fund, acting on behalf of NU and NIS, sent a letter to NGF's

6  counsel inquiring about the status of NGF's dissolution ("April 30 Letter").  The Nazarbayev Fund

7  had provided the assets that funded NGF in September 2020, and it had provided those assets for

8  the purpose of supporting Plaintiffs.  The April 30 Letter noted that NU and NIS understood that

9  NGF had dissolved on February 21, 2024, and requested timely disbursement of funds to help

10 defray the costs of educating tens of thousands of students annually.

11     127.    On May 28, 2024, NGF's counsel sent a letter ("May 28 Letter") responding that

12 "[t]he NGF Board has voted to *initiate* NGF's liquidation" and that "the NGF Board's intention

13 [is] to donate any remaining surplus assets or funds as soon as possible pursuant to its legal and

14 fiduciary obligations under Nevada law."  The May 28 Letter implied that the NGF Board retained

15 control over the assets by stating "the NGF Board is more than willing to consider any grant

16 requests from NU and/or NIS."

17     128.    This statement informing Plaintiffs that they could prepare "grant requests" that the

18 Board of NGF would consider for approval was a condition neither required nor contemplated by

19 NGF's Amended Articles or the Settlement Agreement.

20     129.    Critically, the May 28 Letter failed to confirm that not only had NGF "initiated"

21 dissolution but that it had dissolved nearly three months earlier on February 21, 2024.  It also failed

22 to disclose that all of NGF's remaining assets (i.e. those that Defendants had not already pillaged)

23 had been transferred to a trust eight days after NGF's dissolution.

24     130.    Only after three months of correspondence—and continued inquiries from

25 Plaintiffs—did NGF finally disclose the details of Nevada Trust's existence to Plaintiffs.

26     131.    This active concealment of material facts prevented Plaintiffs from taking timely

27 action to protect their rights and allowed the depletion of assets to continue.

28

### G.    Discovery of the Full Scope of Unlawful Conduct

132.    On August 15, 2024, counsel for the Nazarbayev Fund sent another letter to counsel for the Director Defendants and NGF, expressing "extreme[] concern[] as to the state and timing of the funds NGF is contractually obligated to transfer."  Despite these concerns and the clear contractual deadline having long passed, the Director Defendants and NGF refused to provide a full accounting or to distribute the remaining assets to Plaintiffs.

133.    Instead, on August 29, 2024, Defendants Armao and N. Bekturganov filed a petition in the Probate division of Nevada state court seeking assumption of jurisdiction over the Nevada Trust and claiming newfound "uncertainty" about whether the Nazarbayev Fund had authority to act for Plaintiffs—despite NGF having never raised such objections during months of prior correspondence.

134.    Beginning on or about August 17, 2025, based on documents Defendants Armao and N. Bekturganov filed in the Nevada Probate Court proceeding, Plaintiffs discovered for the first time the full scope of Director Defendants' misconduct, including the more than $51 million in total payments to Wahid, the severance compensation paid to the Director Defendants in 2023, and the sale of JH and JTL.

135.    Prior to August 2025, Plaintiffs could not have discovered through reasonable diligence the material facts constituting their claims because: (a) the Director Defendants actively concealed NGF's dissolution and the Trust's creation for months; (b) the sale of JH and JTL were not public, and Defendants did not inform Plaintiffs of the sale; (c) the specific details of payments to Wahid and the Director Defendants were not initially publicly available, in part because NGF's Form 990 filings for the years 2023 and 2024 were not filed until November 16, 2024 and November 17, 2025, respectively; and (d) aside from what has been filed in Nevada Probate Court, Plaintiffs have had no access to NGF's internal financial records, Board minutes, or other documents that would have revealed the scope of the self-dealing.

136.    Upon discovering the facts through the documents Defendants Armao and N. Bekturganov filed in the Nevada Probate Court proceeding, Plaintiffs immediately commenced investigation of Defendants' improper actions.

**V.     DIRECTOR DEFENDANTS DEFIED AN ORDER FROM THE NEVADA PROBATE COURT TO DISTRIBUTE ASSETS TO PLAINTIFFS**

**A.     The Nevada Probate Court Held that the Trust was Invalid and the Trustees Violated Their Fiduciary Duties**

137.    On December 27, 2024, Plaintiffs filed a Cross-Petition in the Nevada Probate Court proceedings to invalidate the Trust and seek distribution of its assets to Plaintiffs.

138.    On August 12, 2025, the Nevada Probate Court issued a Minute Order granting Plaintiffs' Cross-Petition in its entirety.

139.    In its August 12, 2025 Minute Order, the Nevada Probate Court rendered the Nevada Trust invalid.  It found that:

(a)     NGF had "improperly transferred its remaining assets into the NGF Nevada Trust" in violation of NGF's Amended Articles and the Settlement Agreement, and that the "transfer created an unauthorized beneficiary class;"

(b)     Defendants Armao and N. Bekturganov, who were the Trustees of the Nevada Trust, "engaged in self-dealing, authorizing substantial compensation without independent oversight and indemnification provisions for themselves, and provided insufficient justification for depletion of significant Trust assets;" and

(c)     Defendants Armao and N. Bekturganov had breached their fiduciary duties to Plaintiffs.[7]

---

[7]  Ex. 3 at pg. 13.

140.    Based on these findings, the Court ordered Defendants Armao and N. Bekturganov to provide "a full and detailed accounting of all Trust assets, expenditures, compensation, distributions, and legal expenses incurred since inception" within thirty days.  It found that the Nevada Trust's assets should be redistributed to Plaintiffs, with a $10 million reserve held for expenses relating to the wind-down of NGF.[8]

**B.    Despite the Probate Court Ruling, Defendants Have Failed to Turn Over the Funds**

141.    Despite the Nevada Probate Court's unequivocal August 12, 2025, ruling that the Nevada Trust is invalid and that all assets must be distributed to Plaintiffs, Defendants have still failed to distribute any of NGF's remaining assets to Plaintiffs.  Plaintiffs have not received any funds from NGF since 2022.

142.    In connection with the Nevada Probate Court proceeding, Defendants Armao and N. Bekturganov have provided an accounting of the Nevada Trust's assets to Plaintiffs.  However, this accounting is an incomplete picture of what assets should have been transferred to Plaintiffs. The accounting does not show what assets JH and JTL held after the Settlement Agreement or at the time of their sale in January 2024, nor does it show what funds NGF held before it dissolved or what happened to those funds.  For example, JTL's Annual Financial Statements indicate that it held approximately $35 million in cash and cash equivalents as of December 31, 2023.  These funds should have flowed from JTL to JH and then to NGF, and NGF would have transferred most or all of the funds to the Nevada Trust.  The accounting produced by the Nevada Trust does not show what happened to JTL's $35 million in funds.  Access to such information is necessary to determine the full scope of Defendants' self-dealing and waste.

143.    The limited information that has surfaced shows that the Director Defendants and Defendant Chuluunkhuu are continuing to deplete assets.  Prior to the Nevada Probate Court's ruling of August 12, 2025, Defendants Armao and N. Bekturganov had already spent more than

---

[8]  Ex. 3 at pgs. 13-14.

$2.2 million of the funds in the Nevada Trust, of which an overwhelming majority was comprised of trustees' fees ($1,050,000) and legal fees ($570,820). On January 9, 2026, the Trustees sought authorization from the Nevada Probate Court for a further $1,495,510.11 in disbursements, including compensation for the Director Defendants and Defendant Chuluunkhuu, "reimbursement" to their personal companies for expenses purportedly incurred, and legal fees defending (among others) a U.S. Department of Justice criminal investigation concerning their conduct as directors and officers of NGF.

144.    Plaintiffs are continuing to seek relief from the Nevada Probate Court regarding the Nevada Trust. Because the Nevada Probate Court proceeding is limited to the Nevada Trust and does not extend to broader claims for damages arising from Defendants' conduct before NGF's dissolution, and because of the Director Defendants' continued refusal to distribute NGF's assets to Plaintiffs as required, Plaintiffs bring this action to preserve and enforce all of their rights.

145.    Plaintiffs have now been deprived of any funding from NGF for over three years, despite NGF's sole stated purpose of funding Plaintiffs and despite NGF's obligation under the Amended Articles and Settlement Agreement to distribute its remaining assets to Plaintiffs upon dissolution. This deprivation of funding has directly harmed NIS, which provides education to approximately 19,000 students a year at no cost to the students or their families. These tangible and significant harms have *inter alia* impaired NIS's ability to proceed with needed school renovations, address antiquated computer systems, and purchase standard classroom educational tools including white boards, interactive panels and laptops for teachers and students. Further, as part of NIS's original development plan, NIS had intended to gradually reduce reliance on state funding, because it expected to receive funding from NGF. Accordingly, since 2022, state budget allocations for NIS have been reduced to nearly one-third of their prior levels, thereby compounding the financial harm caused by Defendants' systematic diversion of assets.

146.    This deprivation of funding has also harmed NU including *inter alia* its ability to provide scholarships and grants to talented students, which is needed to increase access to education and train highly-qualified specialists necessary for Kazakhstan's development. Because

NU incorporated anticipated NGF funding into their annual budgets, state budget allocations to NU were correspondingly reduced.

147.    These ongoing damages are the result of a consistent and deliberate course of dealing by the Individual Defendants.  The Individual Defendants are sophisticated individuals with access to legal counsel who understood their fiduciary and legal obligations.

148.    The Individual Defendants knew that NGF's Amended Articles designated Plaintiffs as NGF's sole beneficiaries and that the Amended Articles required distribution of all assets to Plaintiffs upon dissolution.  They further knew that the Settlement Agreement confirmed this obligation and contractually bound NGF to liquidate and distribute all assets to Plaintiffs. They nonetheless chose to violate their duties in order to enrich themselves and their cronies.  They should now be held to account for their wrongdoing.

## CLAIMS FOR RELIEF

### FIRST  CLAIM FOR RELIEF

#### Breach of Fiduciary Duties

##### (Against the Director Defendants and A. Bekturganov)

149.    Plaintiffs reallege and incorporate by reference each and every allegation contained in paragraphs 1 through 148 as though fully set forth herein.

150.    As directors and officers of NGF, Defendants McCleary, Armao, N. Bekturganov, and A. Bekturganov owed fiduciary duties to NGF and to Plaintiffs as NGF's sole charitable beneficiaries including the duties of loyalty, care and prudence, impartiality, reporting and accounting.

151.    These fiduciary duties arose from multiple sources: (a) NGF's Amended Articles of Incorporation, which designated Plaintiffs as the sole and exclusive beneficiaries of NGF's charitable purpose, required distribution of all assets to Plaintiffs upon dissolution, and thereby created enforceable fiduciary duties running from NGF's directors and officers to Plaintiffs as the designated beneficiaries; (b) Nevada common law imposing fiduciary duties on corporate directors and officers; (c) Nevada common law prohibiting self-dealing by corporate fiduciaries, *see*

*Horwitz v. Sw. Forest Indus., Inc.*, 604 F. Supp. 1130, 1134 (D. Nev. 1985) (applying Nevada law); and (d) Nev. Rev. Stat. § 82.221, which requires nonprofit corporation directors and officers to perform their duties in good faith and in a manner they reasonably believe to be in the best interests of the corporation.

152.    The Director and Officer Defendants breached these fiduciary duties in multiple respects.

**a.    <u>Corporate Waste: The $51 Million in Payments to Wahid</u>**

153.    The Director Defendants and A. Bekturganov breached their fiduciary duties owed to Plaintiffs by approving and causing NGF to make payments totaling more than $51 million to Wahid, including a $35 million "option payment" in April 2023 and a $12 million severance payment in August 2023.

154.    These payments constituted waste of corporate assets.  They served no legitimate corporate or charitable purpose.  They provided no benefit to NGF or Plaintiffs.  They were grossly excessive and unreasonable, particularly to the extent that they comprised a large percentage of the total amount of cash assets held by NGF, JH, and JTL at the time.

155.     No ordinarily prudent person in the Director Defendants and A. Bekturganov's position would have approved the excessive payments totaling over $51 million to Wahid.

156.    The Director Defendants and A. Bekturganov's approval of these payments violated their duties of care and loyalty and constituted a knowing violation of their obligation to preserve charitable assets for Plaintiffs' benefit.

**b.    <u>Failure to Monitor and Approve Major Corporate Expenditures</u>**

157.    As directors and officers of NGF, Defendants McCleary, Armao, N. Bekturganov, and A. Bekturganov each had a fiduciary duty to monitor and oversee major expenditures by JH and JTL and to ensure that such expenditures did not deplete assets that the Amended Articles designated for Plaintiffs.

158.    Defendants McCleary, Armao, N. Bekturganov, and A. Bekturganov breached this duty by failing to prevent, or affirmatively approving, the $51 million in payments to Wahid from entities that NGF controlled.

159.    These payments directly impaired NGF's ability to fulfill its charitable mission and directly harmed Plaintiffs by depleting assets that NGF's Amended Articles required to be distributed to Plaintiffs.

### c.    Self-Dealing: Excessive Compensation and Three Years' Severance

160.    The Director Defendants (Defendants McCleary, Armao, and N. Bekturganov) breached their fiduciary duties by approving and taking for themselves excessive compensation and bonuses from NGF's assets.

161.    The Director Defendants approved for themselves severance compensation in the amount of approximately $810,000 for Defendant McCleary and $720,000 each for Defendants Armao and N. Bekturganov, which were paid in February 2024.

162.    These termination fees were excessive, representing approximately three years' worth of compensation for Director Defendants who had worked at NGF for less than two years. The termination fees were also pretextual, because the Director Defendants effected such "severance" by dissolving NGF, only to turn around and approve themselves compensation from the Nevada Trust.

163.    These payments constituted self-dealing since they approved of and distributed their own compensation.  The Director Defendants had a conflict of interest between their personal financial benefit and their duty to preserve assets for Plaintiffs.

164.    The Director Defendants placed their personal interests ahead of the interests of NGF and its charitable beneficiaries by voting to enrich themselves from assets that belonged to Plaintiffs.

### d.  <u>Failure to Preserve Assets for Charitable Purposes</u>

165.    Defendants McCleary, Armao, N. Bekturganov, and A. Bekturganov had a fundamental fiduciary duty arising from the Amended Articles to preserve NGF's assets for their intended charitable purpose: funding NU and NIS.

166.    The Director Defendants breached this duty by: (a) approving more than $51 million in payments to Wahid rather than preserving those funds for distribution to Plaintiffs; (b) awarding themselves excessive compensation; (c) selling JH and JTL to the JH Defense Trust and for a depressed amount; (d) transferring remaining assets to the Nevada Trust rather than Plaintiffs; (e) using NGF's assets to compensate themselves and Defendant Chuluunkhuu; and (f) making risky investments with NGF's assets.

167.    Defendant A. Bekturganov breached this duty by: (a) approving more than $51 million in payments to Wahid rather than preserving those funds for distribution to Plaintiffs; (b) selling JH and JTL to the JH Defense Trust; and (c) transferring remaining assets to the Nevada Trust rather than to Plaintiffs.

168.    Each of these actions prioritized the personal interests of Defendants McCleary, Armao, N. Bekturganov, and A. Bekturganov over the interests of the Plaintiffs and violated their fundamental obligation to preserve charitable assets for their intended beneficiaries.

169.    Defendants McCleary, Armao, N. Bekturganov, and A. Bekturganov's breaches of fiduciary duty directly and proximately caused harm to Plaintiffs.

170.    But for Defendants McCleary, Armao, N. Bekturganov, and A. Bekturganov's approval of more than $51 million in payments to Wahid, those funds would have been available for distribution to Plaintiffs under NGF's Amended Articles and the Settlement Agreement.

171.    But for the Director Defendants' self-dealing in taking excessive compensation, those funds would have been available for distribution to Plaintiffs.

172.    But for Defendants McCleary, Armao, N. Bekturganov, and A. Bekturganov's failure to timely liquidate, delay in distribution of assets, and ultimate transfer of assets to a trust

they controlled, Plaintiffs would have received the full value of NGF's assets as required by NGF's Amended Articles and the Settlement Agreement.

173.    As a direct and proximate result of Defendants McCleary, Armao, N. Bekturganov, and A. Bekturganov's breaches of fiduciary duty, Plaintiffs have suffered damages exceeding $28 million, representing the difference between the assets Plaintiffs should have received and the depleted amount actually available after the misconduct of Defendants McCleary, Armao, N. Bekturganov, and A. Bekturganov.

174.    Defendants McCleary, Armao, N. Bekturganov, and A. Bekturganov are each jointly and severally liable for all damages proximately caused by their breaches of fiduciary duty.

## SECOND CLAIM FOR RELIEF

### Breach of Fiduciary Duties

### (Against Chuluunkhuu)

175.    Plaintiffs reallege and incorporate by reference each and every allegation contained in paragraphs 1 through 174 as though fully set forth herein.

176.    As Executive Director of NGF, Defendant Chuluunkhuu owed fiduciary duties to NGF and to Plaintiffs as NGF's sole charitable beneficiaries.

177.    These fiduciary duties arose from multiple sources: (a) NGF's Amended Articles of Incorporation, which designated Plaintiffs as the sole and exclusive beneficiaries of NGF's charitable purpose, required distribution of all assets to Plaintiffs upon dissolution, and thereby created enforceable fiduciary duties running from NGF's officers to Plaintiffs as the designated beneficiaries; (b) Nevada common law imposing fiduciary duties on corporate directors and officers; (c) Nevada common law prohibiting self-dealing by corporate fiduciaries, *see Horwitz*, 604 F. Supp. at 1134; and (d) Nev. Rev. Stat. § 82.221, which requires nonprofit corporation directors and officers to perform their duties in good faith and in a manner they reasonably believe to be in the best interests of the corporation.

178.    Defendant Chuluunkhuu breached these fiduciary duties by transferring NGF's remaining assets to the Nevada Trust rather than Plaintiffs, and making risky investments with NGF's assets.

179.    Defendant Chuluunkhuu's breaches of fiduciary duty directly and proximately caused harm to Plaintiffs.

180.    But for Defendant Chuluunkhuu's failure to transfer NGF's assets Plaintiffs and Defendant Chuluunkhuu's failure to preserve NGF's assets for Plaintiffs' benefit, Plaintiffs would have received the full value of NGF's assets as required by contract and NGF's governing documents.

181.    As a direct and proximate result of the Defendant Chuluunkhuu's breaches of fiduciary duty, Plaintiffs have suffered damages as set forth herein in an amount to be proven at trial.

### THIRD  CLAIM FOR RELIEF

### Aiding and Abetting Breach of Fiduciary Duty

### (Against Defendant Chuluunkhuu)

### (In Alternative to Count II)

182.    Plaintiffs reallege and incorporate by reference each and every allegation contained in paragraphs 1 through 181 as though fully set forth herein.

183.    As alleged in Count I, the Director Defendants and Defendant A. Bekturganov owed fiduciary duties to Plaintiffs as the sole charitable beneficiaries of NGF, and they breached those duties in part by transferring NGF's remaining assets to the Nevada Trust rather than Plaintiffs and by making risky investments with NGF's assets.

184.    Defendant Chuluunkhuu knew of the fiduciary relationship between the Director Defendants and Defendant A. Bekturganov and Plaintiffs.  Defendant Chuluunkhuu was aware that NGF was a charitable corporation whose sole purpose was to benefit NU and NIS, and that the Director Defendants and Defendant A. Bekturganov, as fiduciaries of that charitable corporation, had duties to preserve assets for the Plaintiffs' benefit.

185.    Defendant Chuluunkhuu knew or should have known that the Director Defendants and Defendant A. Bekturganov were breaching their fiduciary duties by failing to preserve NGF's assets to benefit Plaintiffs and by diverting NGF's assets before its dissolution.

186.    Despite this knowledge, Defendant Chuluunkhuu substantially assisted the breaches of fiduciary duties committed by the Director Defendants and Defendant A. Bekturganov, by participating in the dissolution of NGF and the creation of the Nevada Trust, by diverting NGF's assets to the Nevada Trust, and by wasting NGF's assets after they were transferred to the Nevada Trust.

187.    Defendant Chuluunkhuu knowingly participated in the Director Defendants and Defendant A. Bekturganov's breaches of fiduciary duties.

188.    As a direct and proximate result of Defendant Chuluunkhuu's aiding and abetting the Director Defendants and Defendant A. Bekturganov's breaches of fiduciary duty, Plaintiffs have suffered damages as set forth herein in an amount to be proven at trial.

### FOURTH  CLAIM FOR RELIEF

### Aiding and Abetting Breach of Fiduciary Duty

### (**Against Entity Defendants JH, NGF Holdings LLC, NGF Protector LLC, and the Nevada Trust**)

189.    Plaintiffs reallege and incorporate by reference each and every allegation contained in paragraphs 1 through 188 as though fully set forth herein.

190.    As alleged in Count I, the Director Defendants and Defendant A. Bekturganov owed fiduciary duties to Plaintiffs as the sole charitable beneficiaries of NGF, and they breached those duties in part by approving excessive compensation to Wahid and by approving the sale of JH and JTL to the JH Defense Trust.

191.    Defendant JH knew of the fiduciary relationship between the Director Defendants and Defendant A. Bekturganov and Plaintiffs.  As a Nevada entity wholly owned by NGF, JH knew or should have known that NGF's sole purpose was to benefit Plaintiffs and that the Director

1   Defendants and Defendant A. Bekturganov had fiduciary duties to preserve NGF's assets for

2   Plaintiffs' benefit.

3          192.    Despite this knowledge, JH substantially assisted the Director Defendants and

4   Defendant A. Bekturganov's breaches of fiduciary duties by: (a) facilitating and approving

5   payments totaling over $51 million to Wahid, which depleted assets that should have been

6   preserved for distribution to Plaintiffs; and (b) participating in the sale of JH and JTL to JH Defense

7   Trust rather than being liquidated with proceeds distributed to Plaintiffs as required by NGF's

8   Amended Articles and the Settlement Agreement.

9          193.    Defendants NGF Holdings LLC and NGF Protector LLC knew or should have

10  known of the fiduciary duty relationship between the Director Defendants and Defendant A.

11  Bekturganov and Plaintiffs.  These entities were formed on December 28, 2023—approximately

12  two months before NGF's dissolution—by the Director Defendants specifically in anticipation of

13  diverting NGF's assets away from Plaintiffs.

14         194.    Despite this knowledge, NGF Holdings LLC and NGF Protector LLC substantially

15  assisted the Director Defendants and Defendant A. Bekturganov's breaches of fiduciary duties by:

16  (a) receiving NGF assets that should have been distributed to Plaintiffs; (b) holding bank accounts

17  purportedly for the Nevada Trust, thereby facilitating the diversion of assets away from Plaintiffs;

18  and (c) in the case of NGF Protector LLC, accepting appointments as Trust Protector to create

19  sham oversight over trustees Armao and N. Bekturganov (who were themselves members of NGF

20  Protector LLC), thereby facilitating the continued self-dealing and breach of fiduciary duties.

21         195.    Defendant Nevada Trust knew or should have known of the fiduciary relationship

22  between the Director Defendants and Defendant A. Bekturganov and Plaintiffs.  The Nevada Trust

23  was created on February 29, 2024—eight days after NGF dissolved—specifically to receive assets

24  that, under NGF's Amended Articles and the Settlement Agreement, belonged exclusively to

25  Plaintiffs.

26         196.    Despite this knowledge, the Nevada Trust substantially assisted the Director

27  Defendants and Defendant A. Bekturganov's breaches of fiduciary duties by: (a) receiving

28

approximately $28 million in assets that should have been distributed to Plaintiffs; (b) creating an unauthorized class of beneficiaries in violation of the Director Defendants and Defendant A. Bekturganov's duties to preserve assets exclusively for Plaintiffs; (c) paying excessive compensation ($300,000 annually each) to trustees Armao and N. Bekturganov, Executive Director Chuluunkhuu, and Trust Protector McCleary, thereby further depleting assets that belonged to Plaintiffs; and (d) making risky investments with Plaintiffs' assets rather than preserving them for distribution.

197.    As a direct and proximate result of the Entity Defendants' aiding and abetting the Director Defendants and Defendant A. Bekturganov's breaches of fiduciary duty, Plaintiffs have suffered damages as set forth herein in an amount to be proven at trial.

198.    Each Entity Defendant is jointly and severally liable for all damages proximately caused by their aiding and abetting Director Defendants and Defendant A. Bekturganov's breaches of fiduciary duty.

## FIFTH  CLAIM FOR RELIEF

### Civil Conspiracy

### (Against All Defendants)

199.    Plaintiffs reallege and incorporate by reference each and every allegation contained in paragraphs 1 through 198 as though fully set forth herein.

200.    The Defendants agreed to divert charitable assets from Plaintiffs for personal enrichments, to breach fiduciary duties owed to Plaintiffs, and to violate NGF's Amended Articles and the Settlement Agreement.

201.    The formation and operation of this conspiracy is evidenced by, among other things: (a) the coordinated approval of more than $51 million in payments to Wahid through agreements requiring NGF board approval; (b) the Director Defendants' approval of excessive compensation and bonuses for themselves; (c) the sale of JH and JTL to the JH Defense Trust; (d) the formation on December 28, 2023 of two entities—NGF Protector LLC and NGF Holdings LLC—in anticipation of creating the Nevada Trust and with the Director Defendants as members;

(e) the dissolution of NGF eight days before creation of the Nevada Trust; (f) the creation of the Trust on February 29, 2024 with Defendants Armao and N. Bekturganov appointing themselves as trustees; and (g) the coordinated concealment of these actions from Plaintiffs for months.

202.    These actions demonstrate an agreement among Defendants to breach fiduciary duties, violate the Amended Articles and Settlement Agreement, and misappropriate charitable assets.

203.    Each Defendant committed overt acts in furtherance of the conspiracy, including:

a.    McCleary: approving excessive payments to Wahid in his capacity as Chairman of the Board of Directors of NGF, approving excessive compensation to the Director Defendants, approving the sale of JH and JTL to the JH Defense Trust, approving the creation of the Nevada Trust, authorizing the transfer of NGF's funds to the Nevada Trust, and accepting NGF Protector's appointment as protector of the Nevada Trust;

b.    Armao: approving excessive payments to Wahid in his capacity as a Director of NGF, approving excessive compensation to the Director Defendants, approving the sale of JH and JTL to the JH Defense Trust, approving the creation of the Nevada Trust, authorizing the transfer of NGF's funds to the Nevada Trust, and accepting appointment as trustee of the Nevada Trust;

c.    N. Bekturganov: approving excessive payments to Wahid in his capacity as a Director of NGF, approving excessive compensation to the Director Defendants, approving the sale of JH and JTL to the JH Defense Trust, approving the creation of the Nevada Trust, authorizing the transfer of NGF's funds to the Nevada Trust, and accepting appointment as trustee of the Nevada Trust;

d.    A. Bekturganov: Approving excessive payments to Wahid in his capacity as Executive Director of NGF, coordinating the sale of JH and JTL to the

JH Defense Trust as the Executive Director of NGF and a Manager of JH, approving the creation of the Nevada Trust, and authorizing the transfer of NGF's funds to the Nevada Trust;

e.   Chuluunkhuu: Filing the Certificate of Dissolution of NGF, authorizing the transfer of NGF's funds to the Nevada Trust in his role as Executive Director of NGF, and accepting appointment as Executive Director of the Nevada Trust;

f.   JH: Facilitating and approving payments of over $51 million to Wahid, and participating in the sale to the JH Defense Trust.

g.   NGF Holdings LLC: Receiving NGF assets that should have been distributed to Plaintiffs, holding bank accounts purportedly for the Nevada Trust, and facilitating the diversion of assets away from Plaintiffs.

h.   NGF Protector LLC: Accepting appointment as Trust Protector to create sham oversight over trustees Armao and N. Bekturganov (who were themselves members of NGF Protector LLC), and facilitating the continued control of assets by the Director Defendants and Defendant Chuluunkhuu.

i.   Nevada Trust: Receiving approximately $28 million in assets that belonged to Plaintiffs, creating an unauthorized class of beneficiaries, paying excessive compensation to trustees and executives, and making risky investments with assets that should have been distributed to Plaintiffs.

204.   As a direct and proximate result of Defendants' conspiracy, Plaintiffs have suffered damages as set forth herein in an amount to be proven at trial.

205.   Each Defendant is jointly and severally liable for all damages proximately caused by the conspiracy.

## SIXTH  CLAIM FOR RELIEF

### Conversion

### (Against All Defendants)

206.    Plaintiffs reallege and incorporate by reference each and every allegation contained in paragraphs 1 through 205 as though fully set forth herein.

207.    Under NGF's Amended Articles of Incorporation and the Settlement Agreement, Plaintiffs had a right to receive all of NGF's remaining assets upon liquidation.

208.    This right was a property interest that vested in Plaintiffs upon NGF's entry into the Settlement Agreement and NGF's subsequent obligation to liquidate and distribute assets.

209.    Defendants intentionally and substantially interfered with Plaintiffs' property interest by (a) causing NGF to pay more than $51 million to Wahid; (b) taking excessive compensation; (c) coordinating and/or approving the sale of JH and JTL to JH Defense Trust; (d) transferring remaining assets to the Nevada Trust rather than to Plaintiffs; and (e) retaining control over assets that belonged to Plaintiffs.

210.    Defendants exercised dominion and control over Plaintiffs' property in a manner inconsistent with Plaintiffs' rights.

211.    Defendants' acts of conversion have deprived Plaintiffs of their property and caused Plaintiffs to suffer damages as set forth herein in an amount to be proven at trial.

212.    Each Defendant is jointly and severally liable for all damages proximately caused by their acts of conversion.

## PRAYER FOR RELIEF

213.    WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendants as follows:

(a)     Damages exceeding $28 million in an amount to be proven at trial;

(b)     For an order requiring Defendants to provide a complete accounting of all of NGF's assets from January 1, 2023 through the present, including but not limited to: all cash and non-cash assets held by NGF, JH, JTL, NGF Holdings, NGF Protector, and the Nevada Trust;

all payments made by or on behalf of NGF, JH, JTL, NGF Holdings, NGF Protector, and the Nevada Trust; all transfers of assets from NGF, JH, JTL, NGF Holdings, NGF Protector, and/or the Nevada Trust to any person or entity; the disposition of NGF's 100% ownership interest in JH; all compensation paid to officers, directors, and related parties; and all fees paid to vendors and service providers;

(c)    For an order imposing a constructive trust in Plaintiffs' favor on: all assets currently held by the NGF Nevada Trust (which the Nevada Probate Court has declared invalid); all assets held by NGF Holding LLC and NGF Protector LLC that originated from NGF; and any other assets or funds that were transferred from NGF and that rightfully belonged to Plaintiffs;

(d)    For an order requiring disgorgement by the Director Defendants and Defendant A. Bekturganov of all compensation, bonuses, and fees they received from NGF during the period from July 1, 2023 through February 21, 2024;

(e)    For an order enforcing the August 12, 2025 Minute Order of the Clark County District Court, Probate Division, which declared the NGF Nevada Trust invalid, found that Armao and N. Bekturganov violated their fiduciary duties, and ordered distribution of all remaining Trust assets to Nazarbayev University and Nazarbayev Intellectual Schools;

(f)    For declaratory relief establishing that: Plaintiffs were and are the sole rightful beneficiaries of all of NGF's assets, and the Director Defendants, Defendant A. Bekturganov, and Defendant Chuluunkhuu breached their fiduciary duties to Plaintiffs;

(g)    For pre-judgment and post-judgment interest at the maximum rate allowed by law;

(h)    For Plaintiffs' reasonable attorneys' fees and costs incurred in prosecuting this action;

(i)    For punitive damages against the Individual Defendants—Joel West McCleary, Robert F. Armao, Nuraly Bekturganov, Aidos Bekturganov, and Ganbat Chuluunkhuu—in an amount sufficient to punish their misconduct and deter similar conduct in the future;

1          (j)     For such and other relief as the Court deems just and proper.

2    **JURY DEMAND**

3    Plaintiffs demand a trial by jury on all issues so triable.

4    DATED: February 20, 2026.

5                             SNELL & WILMER L.L.P.

6                            */s/ Patrick G. Byrne*

7                           Patrick G. Byrne, Esq.
                       Nevada Bar No. 7636

8                           Bradley T. Austin, Esq.
                       Nevada Bar No. 13064

9                           Clark C. Knobel, Esq.
                       Nevada Bar No. 15943

10                          Email: pbyrne@swlaw.com
                       Email: baustin@swlaw.com

11                          Email: cknobel@swlaw.com

12                          Crystal Nix-Hines
                       (*pro hac vice* application forthcoming)

13                          California Bar No. 326971
                       New York Bar No. 2482073

14                          Quinn Emanuel Urquhart & Sullivan LLP
                       Email: crystalnixhines@quinnemanuel.com

15                          Stephen Hauss

16                          (*pro hac vice* application forthcoming)
                       Washington D.C. Bar No. 1009019

17                          California Bar No. 250211
                       Quinn Emanuel Urquhart & Sullivan LLP

18                          Email: stephenhauss@quinnemanuel.com

19                          Christina L. Wu
                       (*pro hac vice* application forthcoming)

20                          California Bar No. 233186
                       Quinn Emanuel Urquhart & Sullivan LLP

21                          Email: christinawu@quinnemanuel.com

22                          *Attorneys for Plaintiffs*

23

24

25

26

27

28

-47-
COMPLAINT

**INDEX TO EXHIBITS**

| Exhibit | Document | Pages |
|---|---|---|
| 1 | December 19, 2019 NGF Articles of Incorporation | 4 |
| 2 | December 30, 2019 NGF Amended Articles of Incorporation | 5 |
| 3 | August 12, 2025 Minute Order of Nevada Probate Court | 5 |

COMPLAINT